Kevin Mahoney, Esq. (SBN: 235367)
kmahoney@mahoney-law.net
Katherine Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400


Ira Spiro (SBN: 67641)
ira@spirolawcorp.com
**IRA SPIRO, ATTORNEY AT LAW**
10573 W Pico Boulevard, #865
Los Angeles, CA 90064
Telephone: (310) 235-2350

Attorneys for Plaintiff GREGORY BENDAU, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BENDAU,<br><br>    Plaintiff,<br><br>    v.<br><br>SEQUOIA ONE PEO, LLC; CEREBRAL MEDICAL GROUP, A PROFESSIONAL CORPORATION; CEREBRAL MEDICAL GROUP, PA fka SOUTH LEMON PROVIDER GROUP, PA; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 3:21-cv-09580-TLT<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Honorable Trina L. Thompson<br>Courtroom: 9, 19th Floor<br><br>Date:          May 16, 2023<br>Time:          2:00 p.m.<br>Courtroom:   9<br><br>Complaint Filed:   Dec. 10, 2021<br>Trial Date:          None Yet Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 16, 2023, at 2:00 p.m. in the above-entitled court, pursuant to Federal Rule of Civil Procedure 23, Plaintiff Gregory Bendau ("Plaintiff") will move the Court for an Order granting preliminary approval of the proposed class action settlement between Plaintiff and Cerebral Medical Group, PC and Cerebral Medical Group, PA ("Defendants" or "Cerebral") (Plaintiff and Defendant are referred to collectively as the "Parties"). The settlement is memorialized in the Parties' "binding agreement" titled "Memorandum of Understanding", submitted herewith as Exhibit A.[1] ("Settlement Agreement" or "Agreement").

The Parties will further move the Court for an Order:

1.     Certifying for settlement purposes the following classes:

    a. Provider Class: all persons who were employed by Cerebral in California as a non-exempt employee with the job title of Associate Therapist, Care Counselor, Licensed Therapist (NE), Prescriber, Therapist Associate (NE) or Therapist Nonexempt any time between December 10, 2017 and September 28, 2022.

    b. Vacation Class Member: means all former employees of Cerebral who were either (a) employed by Cerebral in California as a salaried exempt employee on or after January 1, 2021; or (b) employed by Cerebral in California as a non-exempt employee on or after August 15, 2021 and classified as benefits eligible by Cerebral at any time between August 15, 2021 and September 28, 2022.

2.     Preliminarily approving Settlement;

---

[1] The agreement states in its first paragraph: "This document is a binding agreement. The parties shall enter into a final written Settlement Agreement, the provisions of which shall not be materially inconsistent with this document." However, during the entire time since Plaintiff sent to Defendant a draft of a "final Settlement Agreement" on January 12, 2023, Defendants failed to cooperate or even communicate their contributions to it. Thus, Plaintiff had to file the present motion in order to comply with the Court's deadline for filing a motion for preliminary approval,

3.    Appointing Plaintiff as Class Representative for settlement purposes;

4.    Appointing Plaintiff's counsel, Kevin Mahoney and Katherine Odenbreit of MAHONEY LAW GROUP, APC and Ira Spiro, as Class Counsel for settlement purposes;

5.    Approving Phoenix Class Action Administrators as Settlement Administrators;

6.    Approving the form and content of the Class Notice, and directing the mailing of same;

7.    Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

8.    Directing Defendants to furnish the Settlement Administrator within fifteen (15) business days after the Court grants preliminary approval of the Settlement the Class Data, defined as: , Class Member identifying information in Cerebral's possession including the Class Member's name, last-known mailing address, Social Security number, email address not exclusively in any Defendant's electronic communication system, and number of Class Period Workweeks and PAGA Pay Periods, an indication of whether the individual qualifies as a member of the Vacation Class during the Class Period and/or PAGA Period, and the number of pay periods the individual qualified as a member of the Provider Class during the PAGA Period. and

9.    Setting a Final Approval Hearing.

/-/-/

/-/-/

/-/-/

/-/-/

/-/-/

/-/-/

PLAINTIFF'S NOTICE OF MOTION AND MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

The motion will be based upon this notice, the attached memorandum of points and authorities, the Declarations of Katherine Odenbreit and Ira Spiro concurrently filed herewith, the records and files in this action, and any other further evidence or argument that the Court may properly receive at or before the hearing.

Date: February 6, 2023

By: _Katherine J. Odenbreit_
**MAHONEY LAW GROUP, APC**
**IRA SPIRO, ATTORNEY AT LAW**
Kevin Mahoney
Katherine J. Odenbreit
Ira Spiro
Attorneys for Plaintiff, Gregory Bendau

PLAINTIFF'S NOTICE OF MOTION AND MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION AND PAGA SETTLEMENT

## **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION .................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND...................................4

  A.   The Parties .................................................................................4

  B.   Procedural History and Plaintiff's Claims.........................................5

  C.   Mediation with Hon. Jay Gandhi .....................................................8

III.   SUMMARY OF SETTLEMENT TERMS ...............................................9

  A.   Monetary Terms .........................................................................9

  B.   Settlement Class Members' Released Claims ..................................11

  C.   Aggrieved Employee Release.......................................................11

IV.   CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES IS
APPROPRIATE..................................................................................12

  A.   Numerosity ..............................................................................13

  B.   Common Issues of Law and Fact ..................................................13

  C.   Typicality..................................................................................14

  D.   Adequacy of Representation.........................................................15

  E.   Conditional Certification Pursuant to FRCP 23(b)(3) is   Appropriate as
Common Questions Predominate.........................................................16

V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.17

  A.   Strength of Plaintiffs' Case and Risk, Complexity, and Likely Duration of
Further Litigation.............................................................................19

  B.   Amount Offered in Settlement .....................................................21

  C.   Extent of Discovery Proceedings and Stage of the Proceedings...................22

  D.   Experience and views of counsel ..................................................23

  E.   Arm's length negotiation free from collusion .................................24

VII.   THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE
PROCESS .........................................................................................25

/-/-/

VIII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED............27

IX.    CONCLUSION ...............................................27

TABLE OF CONTENTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Acosta v. Trans Union, LLC,*
  (C.D. Cal. 2007) 243 F.R.D. 377 ........................................................................ 27

*Amchem Products, Inc. v. Windsor,*
  (1997) 521 U.S. 591 ................................................................................. 24, 25

*Armstrong v. Davis,*
  (9th Cir. 2001) 275 F.3d 849 ............................................................................ 22

*Arnold v. United Artists Theatre Circuit, Inc.,*
  (N.D. Cal. 1994) 158 F.R.D. 439 ...................................................................... 21

*Brinker Restaurant Corp. v. Superior Court,*
  (2012) 53 Cal.4th 1004 .................................................................................... 22

*Capitol People First v. State Dept. of Developmental Services,*
  (2007) 155 Cal.App.4th 676 ............................................................................. 23

*Cochran v. Schwan's Home Service, Inc.,*
  (2014) 229 Cal.App.4th 1137 ........................................................................... 15

*Comcast Corp. v. Behrend,*
  (2013) 569 U.S. 27 .......................................................................................... 25

*Day v. NLO,*
  (S.D. Ohio 1994) 851 F.Supp. 869 .................................................................... 23

*Ferrell v. Buckingham Property Management,*
  (E.D. Cal., July 30, 2020, No. 119CV00332NONESAB) 2020 WL 4364647 ... 30

*General Telephone Co. of Southwest v. Falcon,*
  (1982) 457 U.S. 147 ........................................................................................ 23

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)..................................................................... Passim

/-/-/

3

*Hanon v. Dataproducts Corp.*,

   (9th Cir. 1992) 976 F.2d 497......................................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,

   654 F.3d 935............................................................................... 26, 27, 32

*In re Chicken Antitrust Litigation American Poultry*,

   (5th Cir. 1982) 669 F.2d 228......................................................................... 30

*In re Immune Response Securities Litigation*,

   (S.D. Cal. 2007) 497 F.Supp.2d 1166............................................................ 32

*In re Linkedin User Privacy Litigation*,

   (N.D. Cal. 2015) 309 F.R.D. 573.................................................................. 29

*In re Mego Financial Corp. Securities Litigation*,

   (9th Cir. 2000) 213 F.3d 454.................................................................. 29, 31

*In re Omnivision Technologies, Inc.*,

   (N.D. Cal. 2008) 559 F.Supp.2d 1036............................................................ 32

*In re Pacific Enterprises Securities Litigation*,

   (9th Cir. 1995) 47 F.3d 373......................................................................... 31

*In re Tableware Antitrust Litigation*,

   (N.D. Cal. 2007) 484 F.Supp.2d 1078.................................................... 27, 29

*In re Vizio, Inc., Consumer Privacy Litigation*,

   (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639 ........ 29

*Joh v. American Income Life Ins. Co.*,

   2020 WL 109067 (N.D.Cal. Jan. 9, 2020)...................................................... 33

*Lerwill v. Inflight Motion Pictures, Inc.*,

   (9th Cir. 1978) 582 F.2d 507......................................................................... 21

*Linney v. Cellular Alaska Partnership*,

   (9th Cir. 1998) 151 F.3d 1234.................................................... 29, 30, 31, 32

*McGhee v. Bank of America*,

   (1976) 60 Cal.App.3d 442............................................................................. 24

*McPherson v. EF Intercultural Foundation, Inc.*,
  (2020) 47 Cal.App.5th 243 ................................................................. 14
*Mendiola v. CPS Security Solutions, Inc.*,
  (2015) 60 Cal.4th 833 ........................................................................ 28
*Minnick v. Automotive Creations, Inc.*,
  (2017) 13 Cal.App.5th 1000 ............................................................... 14
*Mora v. Cal West Ag Services, Inc.*,
  (E.D. Cal., May 13, 2019, No. 115CV01490LJOEPG) 2019 WL 2084725 ....... 28
*Munday v. Navy Fed. Credit Union*,
  2016 WL 7655807 (C.D. Cal. Sept. 15, 2016) ..................................... 27
*Naranjo v. Spectrum Security Services, Inc.*,
  (2019) 40 Cal.App.5th 444 ................................................................. 15
*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  (C.D. Cal. 2004) 221 F.R.D. 523 ................................................. 27, 32
*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  (9th Cir. 1982) 688 F.2d 615 .............................................................. 26
*Rodriguez v. Hayes*,
  (9th Cir. 2010) 591 F.3d 1105 ............................................................ 23
*Rollins v. Dignity Health*,
  336 F.R.D. 456 (N.D.Cal. 2020) ......................................................... 33
*Schuchardt v. Law Office of Rory W. Clark*,
  (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435 ............. 29
*Scott v. HSS, Inc.*,
  2017 WL 10378588 (C.D.Cal. Apr. 11, 2017) ..................................... 27
*Staton v. Boeing Co.*,
  (9th Cir. 2003) 327 F.3d 938 .............................................................. 26
*Suastez v. Plastic Dress-Up Co.*,
  (1982) 31 Cal.3d 774 .......................................................................... 14

*Tibble v. Edison Intern.*,

   (9th Cir. 2013) 711 F.3d 1061 .................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,

   131 S.Ct. 2541 (2011) ................................................................... 11, 22

*Wehner v. Syntex Corp.*,

   (N.D. Cal. 1987) 117 F.R.D. 641 ............................................................ 23


Statutes

Bus. & Prof. Code § 17200 ..................................................................... 9, 19

California Labor Code section 2698 ..................................................... 18, 20

California Labor Code section 2699(i) ........................................................ 18


Rules

Fed.R.Civ.P. 23(c)(2)(B) ............................................................................ 33

Federal Rule of Civil Procedure 23 ........................................... 3, 24, 26, 35

Federal Rule of Civil Procedure 23 (a)(1) ................................................. 21

Federal Rules of Civil Procedure 23(e)(1)(B) ........................................... 33

FRCP 23(b)(3) ...................................................................................... 24, 25

Rule 23(a) and 23(b) ................................................................................... 21

Rule 23(a) of the Federal Rules of Civil Procedure ........................... 20, 24

Rule 23(b) .................................................................................................... 21

Rule 23(e)(2) ............................................................................................... 25

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiff is a former non-exempt employee of Cerebral with a job often referred to by Cerebral as "Provider." He worked for Cerebral in California between March 16, 2021 to May 28, 2021. As a "Provider", Plaintiff was and is a licensed therapist, providing therapeutic services on behalf of Defendants for their customers who sign up for therapeutic services via Defendants' online platform at www.getcerebral.com.

Plaintiff filed this combined wage and hour class action and PAGA action, alleging that Defendant violated California labor laws by failing to pay wages for all hours worked, failing to timely pay wages (including vacation wages) to employees whose employment had terminated, failing to provide accurate itemized wage statements and to maintain accurate records, and failure to indemnify for business expenditures. Plaintiff further alleges that Defendants violated the unfair competition law (Bus. & Prof. Code § 17200, *et seq.*), and the California Private Attorney Generals Act ("PAGA"). (The complaint is ECF Dkt. No. 1.) Defendant denies all allegations. Plaintiff brought this class action lawsuit on behalf of himself and all persons who were employed by Cerebral in California as a non-exempt employee with the job title of Associate Therapist, Care Counselor, Licensed Therapist (NE), Prescriber, Therapist Associate (NE) or Therapist Nonexempt all persons who were employed by Cerebral in California as a non-exempt employee with the job title of Associate Therapist, Care Counselor, Licensed Therapist (NE), Prescriber, Therapist Associate (NE) or Therapist Nonexempt ("Provider Class"); and all former employees of Cerebral who were either (a) employed by Cerebral in California as a salaried exempt employee on or after January 1, 2021; or (b) employed by Cerebral in California as a non-exempt employee on or after August 15, 2021 and was classified as benefits eligible by Cerebral ("Vacation Class")   in the state of California from four (4) years prior to the commencement of this action

through present. (Declaration of Katherine J. Odenbreit ("Odenbreit Dec."), ¶3.) Plaintiff now seeks preliminary approval of the Class Action and PAGA Settlement Agreement (hereinafter "Agreement"), which will resolve this action in its entirety.

If approved by the Court, the Settlement will create a gross settlement fund (hereinafter referred to as "Maximum Settlement Amount") in the amount of three hundred fifty thousand dollars ($350,000.00) for approximately three hundred ninety-four (394) Class Members. (Odenbreit Dec., ¶4.) The Maximum Settlement Amount includes payments made to Participating Class Members, payments to the Labor and Workforce Development Agency ("LWDA"), settlement administration costs, awards of attorneys' fees and expenses, and a service award to Plaintiff as set forth below. The proposed Settlement is non-reversionary. Class Members will not be required to submit claim forms in order to receive their share of the settlement proceeds. Pursuant to the terms of the Parties' Settlement Agreement, Class Members will be provided with a court approved Notice describing the settlement in detail, which will include each Class Member's anticipated share of the settlement, premised on the Court's approval of administrative costs, attorneys' fees and expenses, and Plaintiff's service award approved by the Court as requested ("Class Notice"). (Odenbreit Dec., Ex. B.) Following receipt of the Class Notice, the Class Members will have the option to "opt out" or elect not to participate in the settlement. (Odenbreit Dec., Ex. A, ¶10(e).) If they do not affirmatively make that election, then each remaining Class Member will receive a settlement check after the "effective date" of the settlement is reached, following the Final Approval of the Settlement.

The Parties' settlement was reached after an all-day, arms-length mediation with experienced wage and hour mediator, Hon. Jay Gandhi (Ret.). (Odenbreit Dec.. ¶11.)  Information exchanged prior to the mediation included redacted wage and hour information, time for approximately 50% of the Provider Class, appointment schedules, pay records, employee handbooks, and other policies. Expert analysis

was used by both sides during the mediation based on the time and payroll records exchanged. The Parties disagreed extensively on the theories and data involved in the litigation and the mediation went well into the early evening. (Odenbreit Dec., ¶11.) The settlement reached between the Parties takes into account the expense, complexity of continued litigation and risk that certification may not be granted and, if so, that it may not be maintained under principles outlined by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). In addition, the Parties' proposed settlement accounts for Defendants' affirmative defenses, which, if Defendants were successful would result in Plaintiff and class members receiving nothing.

The Parties finalized a "Memorandum of Understanding" containing the material terms of the Settlement on or around December 21, 2022. ("Settlement Agreement") (Odenbreit Dec., Ex. A.) On January 12, 2023, Plaintiff's counsel sent to Cerebral's counsel a long-form settlement agreement. After more than three weeks of numerous unsuccessful emails and telephone calls by counsel for Plaintiff to get feedback from Defendants' counsel with regarding to the long-form agreement, as of this writing counsel for Defendants have not sent any proposed changes, and thus a long-form settlement agreement could not be finalized by the deadline set by the Court to file this motion. (Odenbreit Dec., ¶5, Exhibit D.) Plaintiff submits this motion for approval of the Memorandum of Settlement signed by all parties and will supplement or amend accordingly if Defendant sends its proposed changes to Plaintiff's draft of a long-form agreement within a sufficient time and the Parties are able to agree on the terms of long-form agreement.

Plaintiff therefore requests that the Court grant this Motion for Preliminary Approval of Class Action Settlement, approve the Notice Packet to Settlement Class Members, appoint Phoenix Class Action Administration Solutions as the Class Administrator, and schedule a Final Approval Hearing. Defendants do not oppose this request.    Plaintiff further requests that this Court provisionally certify a

settlement class for settlement purposes only. Plaintiff asserts that provisional certification is appropriate because the proposed class is ascertainable, common questions of law and fact predominate over any individualized questions, Plaintiff's claims are typical of those of the Stipulated Class Members, Plaintiff and his counsel can adequately represent the Class Members, and proceeding as a class action is a superior means of resolving this dispute.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant South Lemon is a Florida medical corporation that provides "expert help [] for emotional health", including "help for anxiety, depression, insomnia and ADHD." ([https://getcerebral.com](https://getcerebral.com)). South Lemon provides an online platform in which it delivers services such as online prescriber visits, care counseling and prescription delivery. (*Id.*) South Lemon employs licensed therapists and care counselors who provide counseling and/or therapy to clients. South Lemon's principal office is located in Fort Lauderdale, Florida, and is the entity whose address and name appeared on Plaintiff's wage statements.

Cerebral APC is a California corporation that is in the medical business and has the same officers and directors as South Lemon.

Defendants claim that only South Lemon is the proper Defendant in this case as it was Plaintiff's and the Provider Class Members' "employer" during the priod of four years prior to the filing of Plaintiff's complaint to the present. Plaintiff maintains that both Defendants were Plaintiff's and the Provider Class employers during the relevant time period.

Plaintiff and the Provider Class Members worked for Defendants as non-exempt employees with the job title of Associate Therapist, Care Counselor, Licensed Therapist (NE), Prescriber, Therapist Associate (NE) or Therapist Nonexempt. Plaintiff is a licensed therapist in the State of California. Vacation Class Members consist of all former employees of Cerebral who were either (a)

employed by Cerebral in California as a salaried exempt employee on or after January 1, 2021; or (b) employed by Cerebral in California as a non-exempt employee on or after August 15, 2021 and was classified as benefits eligible by Cerebral.

**B.    Procedural History and Plaintiff's Claims**

On December 10, 2021, Plaintiff, a former employee of Defendants, filed the Class Action in the California Northern District Court. Plaintiff alleged that Defendants (1) failed to pay all wages, including minimum wages for all hours worked; (2) failed to provide accurate itemized wage statements and maintain accurate records; (3) failed to pay wages upon termination of employment including accrued vacation wages; (4) failed to reimburse necessary business expenses and (5) engaged in unfair business practices. (ECF Dkt. No. 1.) Plaintiff sought recovery under the California Labor Code, the applicable Industrial Welfare Commission Wage Order, and the California Business & Professions Code.

Originally Plaintiff also named as a Defendant Sequoia One PEO, LLC. After meeting and conferring with Sequoia One's counsel, Plaintiff's counsel determined Sequoia One was not an "employer" of Plaintiff and the putative class and dismissed Sequoia One from the action. (ECF Dkt. No. 12.) On April 1, 2022, Defendants Cerebral Medical Group, PC and Cerebral Medical Group, PA fka South Lemon Provider Group, PA filed an Answer to the complaint. (ECF Dkt. No. 27.)

Plaintiff contends that Defendants willfully failed to make or keep accurate payroll records for Plaintiff and Class Members because they did not accurately reflect the hours worked due to the alleged unpaid time spent for writing patient notes, attending meetings and waiting for appointments. (Odenbreit Dec., ¶6.) Cerebral maintained a policy of allowing patients to schedule appointments with 3 hours' notice. When Provider Class Members were scheduled to work, they would could be assigned additional appointments which required them to constantly check their appointment schedule throughout the day. (Odenbreit Dec., ¶6.) This

prevented Plaintiff and Provider Class Members from the ability to leave their homes for a significant period of time or engage in extended non-work activities. (Odenbreit Dec., ¶6.) Plaintiff and Provider Class Members were prohibited from recording this time as time worked. (Odenbreit Dec., ¶6.)

Plaintiff also contends Defendants implemented and maintained an unlawful vacation policy which required the forfeiture of unused vacation wages upon separation of employment. (Odenbreit Dec., ¶7.) On or around January 1, 2021, Defendants implemented a "time away from work" policy which allowed Plaintiffs and Vacation Class Members to take time away from work as needed, but required pre-approval and appeared to limit employees to 2 weeks at any one time. (Odenbreit Dec., ¶7.) Initially the program was only offered to Provider Class Members but was expanded on August 15, 2021 to all of Defendants' "benefits eligible" employees. (Odenbreit Dec., ¶7.) Further, Plaintiff contends that employees subject to this policy were still required to maintain a minimal level of availability and as such, the time away from work policy was somewhat illusory. (Odenbreit Dec., ¶7.) As such, Plaintiff contends Defendants were required to pay all vested vacation wages to the Vacation Class Members upon separation of employment. *Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1007, *citing Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774; *McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 263–366.)

Plaintiff also contends Defendants failed to reimburse Provider Class Members for necessary business expenditures incurred as a direct consequence of the discharge of their work duties in violation of Labor Code section 2802. Specifically, Plaintiff alleges he and the Provider Class worked remotely through Defendants' online platform used to access the Defendants' appointment scheduling system, conduct therapy appointments and communicate with Defendants and peers. (Odenbreit Dec., ¶8.) This required the Plaintiff and Provider Class to utilize their own internet service and personal cellular phones to conduct

work. (Odenbreit Dec., ¶8.) Defendants did not reimburse Plaintiff and Provider Class Members for these expenses. *Cochran v. Schwan's Home Service, Inc.* (2014) 229 Cal.App.4th 1137, 1144.)

Plaintiff contends that by failing to include in the final paychecks to former employees all vacation wages and by failing to include time worked by Provider Class Members for which they were not paid Defendants violated Labor Code sections 201 and 202. (Odenbreit Dec., ¶9.) Plaintiff further contends that Defendants failed to pay penalties for each day a former employee was not paid wages for all hours worked. (Odenbreit Dec., ¶9.) Defendants maintain that final paychecks, where applicable, included all wages, that they were not required to pay accrued vacation wages and that no penalties are due or payable.

Plaintiff also contends that Defendants willfully failed to make or keep accurate payroll records for Plaintiff and class members because they did not accurately reflect the hours worked due to Defendants' failure to allow Provider Class Members to record time worked waiting to be engaged for an appointment and for finalizing patient notes. (Odenbreit Dec. ¶ 10.) Defendants maintain that all records were maintained, were accurate and thus, no liability exists to Defendants on these claims. Plaintiff's claims for waiting time penalties and inaccurate wage statements contain certain risks as a result of their derivative nature.   If Plaintiff was not successful in certifying a class for unpaid wages, based on other Court's decisions regarding statutory penalties under Lab. Code, § 203 (waiting time penalties) and 226 (inaccurate wage statement), they are not derivative of a successful claim for premium wages under Lab. Code, § 226.7. Pursuant to *Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, the meal and rest period violations are not a predicate for civil penalties for improper wage statements and untimely final wages under Lab. Code, § 201,-203, 226, 226.3, and 2699. (*Id.*)

Plaintiff sought civil penalties under PAGA for violations of Labor Code. As detailed in the Settlement Agreement the Parties are allocating Five Thousand

Dollars ($5,000.00) to the settlement of PAGA claims.

As Plaintiff's theories of liability are based on policies that apply to all non-exempt hourly employees and all benefit-eligible former employees subject to the Defendants' vacation policies, Plaintiff is confident class certification would be granted as to all causes of action. As discussed above, Defendants deny all liability. Defendants maintain that Settlement Class Members were paid all wages, subject to a lawful paid time off policy and were not required to reimburse expenses as required under California law.   Defendants further contend that they have complied at all times with all applicable California laws, including the *California Labor Code*, the applicable California Wage Order(s), and the Unfair Competition Law.   Defendants contends that if this action were to be litigated further, Defendants would have strong defenses to class certification and on the merits.

On April 20, 2022, the Parties appeared at the Initial Case Management Conference. The Court set the motion for class certification to be heard on January 19, 2023. (ECF Dkt. No. 32.)

Plaintiff promptly served written discovery. (Odenbreit Dec., ¶12.) The Parties were in the process of meeting and conferring about Defendants' responses to this discovery and Plaintiff initiated the process under L.R. 37-1 to file motions to compel further responses when the Parties agreed to attend mediation. (Odenbreit Dec., ¶12.)

## C.    Mediation with Hon. Jay Gandhi

On September 13, 2022, the Parties attended a full day of mediation with Hon. Jay Gandhi (Ret.), a well-known and experienced wage and hour class action mediator and retired United States District Court Magistrate Judge. (Odenbreit Dec., ¶11.) During the mediation the Parties fully explored and discussed with the mediator legal issues in the case, potential strengths and weaknesses on both sides and establishing class membership parameters. (Odenbreit Dec., ¶11.) The issues were hotly contested on both sides. (Odenbreit Dec., ¶11.) After a full day, the

Parties agreed to the principal terms of this Settlement, which were subsequently formalized in a Memorandum of Understanding ("Settlement: or "Agreement") (Odenbreit Dec." Ex. A)

Prior to the mediation, the Parties engaged in informal discovery. Defendants provided to Plaintiff time and pay records for approximately half of the Provider Class and data related to the Vacation Class, Defendants' written policies and handbooks, and identified the number of employees comprising the putative class and aggrieved employees, as well as the relevant total workweeks and pay periods. (Odenbreit Dec. ¶ 12.) Using the aforementioned information and records, Plaintiff and his counsel consulted with an expert. (Odenbreit Dec. ¶ 12.) Plaintiff was able to reasonably assess liability on the part of Defendants and the resulting value of damages, paving the way for the proposed settlement terms.

Based on Plaintiff's analysis of Plaintiff's Claims and Defendants' defenses, Plaintiff and his counsel determined that the agreed-upon sum of three hundred fifty thousand dollars ($350,000.00) was a reasonable and appropriate gross settlement value for this instant action.   (Odenbreit Dec. ¶¶ 27-36.)

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    Monetary Terms

Pursuant to the settlement agreement, and in consideration for the releases of all claims at issue, Defendants agree to pay an amount not to exceed three hundred fifty thousand dollars ($350,000.00) (the "Maximum Settlement Amount"), excluding Defendants' side of payroll taxes (which Defendants will pay separately), as a full and complete settlement of all claims arising from the action all Provider Class and Vacation Class Members.   The Maximum Settlement Amount includes payments made to Participating Class Members, settlement administration costs, awards of attorneys' fees and expenses, the service award for Plaintiff, if approved, and payment to the LWDA.   (Odenbreit Dec., Ex. A, ¶4(a).) The Settlement Agreement provides that the Gross Settlement Amount will be allocated as follows:

- Administration will be handled by Phoenix Class Action Administrators, a third-party settlement Administrator, and the cost of the Administration shall not exceed eight thousand dollars ($8,000.00) and will be paid out of the Maximum Settlement Amount (Odenbreit Dec. ¶ 24; Exhibit A, Paragraph 10(a));

- Defendants will not oppose an application for a class Representative Service Payment in the amount of five thousand dollars ($5,000.00), to be paid out of the Maximum Settlement Amount (Odenbreit Dec. Exhibit A, Paragraph 9);

- Defendants will not oppose Class Counsel's application for a Class Counsel Fees Award that is up to one hundred sixteen thousand six hundred fifty-five dollars ($116,655.00), which is 33.33% of the Maximum Settlement Amount and Class Counsel Litigation Expenses not to exceed fifteen thousand dollars ($15,000.00) (Odenbreit Dec. Exhibit A, Paragraph 8);

- Five Thousand Dollars ($5,000.00) from the Maximum Settlement Amount to compromise of claims brought under the Private Attorneys General Act of 2004, California Labor Code section 2698 et seq. California Labor Code section 2699(i) requires that the parties distribute any settlement of PAGA claims as follows: 75% to the State of California's Labor Workforce Development Agency for enforcement of labor laws and education of employers; and 25% to "aggrieved employees." Accordingly, the Parties agree that Three Thousand Seven Hundred Fifty Dollars ($3,750.00) of the LWDA PAGA Allocation will be paid to the Labor Workforce Development Agency from the Gross Settlement Fund by the Claims Administrator. The remaining One Thousand Two Hundred Fifty Dollars ($1,250.00) of the LWDA PAGA Allocation will be part of the Net Settlement

MEMORANDUM OF POINTS AND AUTHORITIES

Fund to be distributed in accordance with the terms of this Settlement. (Odenbreit Dec., Ex. A, ¶4(a).)

**B.    Settlement Class Members' Released Claims**

As of the full funding of the Maximum Settlement Fund, Participating Settlement Class Member, unless he or she has properly elected to opt out of the Settlement hereby releases Defendants from the following claims for the entire Class Period (from December 10, 2017 up to and including September 28, 2022) upon final approval and funding of the Settlement by the Court, each Participating Class Member, together and individually, on their behalf and on behalf of their respective heirs, executors, estate and benefit plan administrators, and attorneys, shall fully and forever release and discharge Released Parties from all claims based on the allegations of Defendants' conduct in paragraphs 20 through 28 of the Complaint in the Action (complaint filed December 10, 2021), and all claims for: (1) failure to pay wages for all hours worked; (2) failure to pay accrued and unused vacation time; (3) failure to keep accurate payroll records and provide accurate itemized wage statements; (4) failure to pay wages due during or at separation of employment; (5) failure to indemnify business expenses; (6) claims asserted through California Business & Professions Code sec. 17200 et. seq. based on the claims described in (1) through (5) above in this paragraph; (7) claims for statutory penalties based on the claims described in (1) through (6) above in this paragraph; (8) interest based on the claims described in (1) through (7) above in this paragraph; and (9) attorneys' fees and costs based on the claims described in (1) through (8) above in this paragraph. The claims released are limited to those that arose during the Class Period. (Odenbreit Dec., Ex. A, ¶11(c).)

**C.    Aggrieved Employee Release**

As of the full funding of the Maximum Settlement Fund, Aggrieved Employee releases Defendants from the following claims for the entire PAGA Period (from October 5, 2020, up to and including September 28, 2022) upon final approval of

the Settlement by the Court, each Eligible Aggrieved Employee, together and individually, on their behalf and on behalf of their respective heirs, executors, administrators, estate and benefit plan administrators, and attorneys, shall fully and forever release and discharge all the Released Parties from all claims for civil penalties under PAGA (the Labor Code Private Attorney General Act, California Labor Code §§ 2698, et. seq.) based on the allegations of Defendants' conduct in paragraphs 20 through 28 of the Complaint in the Action (complaint filed December 10, 2021) or based on the claims that were specified in the letter Plaintiff sent to the LWDA on or about October 5, 2021 or in the Sixth Cause of Action in Plaintiff's Complaint in the Action, and all claims for civil penalties under PAGA for (1) failure to pay wages for all hours worked; (2) failure to pay accrued and unused vacation time; (3) failure to keep accurate payroll records and provide accurate itemized wage statements; (4) failure to pay wages due during or at separation of employment; (5) failure to indemnify business expenses. The release of the PAGA Claims is effective, regardless of whether the Eligible Aggrieved Employee submits a timely and valid request to exclude him or herself from this Settlement. The claims released are limited to those that arose during the PAGA Period. (Odenbreit Dec., Ex. A, ¶11(d).)

## IV.   CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Parties have stipulated that the court may, for settlement purposes only, certify a Settlement Class. A proposed class may be conditionally certified if it "satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.   (*Hanlon v. Chrysler Corp.*   150 F.3d 1011, 1019 (9th Cir. 1998).)   The party seeking certification of a proposed settlement class must also show that the action falls within one of the three subsections of Rule 23(b) relating to predominance of common questions and superiority of the class action mechanism. All of the requirements of Rule 23(a) and

23(b) are met here.

## A.    Numerosity

Federal Rule of Civil Procedure 23 (a)(1) requires that the class is so numerous that joinder of all members is impracticable.    Numerosity does not require that joinder of all Members be impossible, but only that joinder be impracticable.   (*Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440.) In this matter, the Settlement Class includes approximately 959 current and former employees, and therefore, numerosity is easily established. In this case, the Parties estimate there are approximately 394 settlement Class Members. (Odenbreit Dec., ¶13.) Given the common issues of law and fact present in the case, numerosity is satisfied.

Additionally, the proposed class must be ascertainable, and must identify, "a distinct group of plaintiffs whose members can be identified with particularity." (*Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1978) 582 F.2d 507, 512.)   Here, the members of the proposed class can easily be identified through Defendants' own timekeeping, payroll records and other employment records. (Odenbreit Dec., ¶x.) Therefore, the settlement class is both sufficiently numerous and ascertainable.

## B.    Common Issues of Law and Fact

The commonality requirement is met if there are questions of law and fact common to the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").   Here, Plaintiff maintains that common factual and legal issues include, among other things: (1) whether Defendants engaged in a common course of failing to compensate Provider Class employees for all hours worked, 2) whether Provider Class employees were not reimbursed for necessary business expenses; (3) whether Defendant's vacation policy required the payment of accrued vacation to former employees at time of separation of employment, and (4) nwhether these alleged

violations resulted in ancillary violations of Labor Code, § 203, and 226, as well whether they justify penalties under PAGA and support the basis for relief under the UCL. Defendant does not oppose these contentions for the purpose of this Settlement only.   Furthermore, Plaintiff asserts that all Class Members suffer from, and seek redress for, the same alleged injuries. Similarly, Defendants do not oppose these contentions for the purpose of this settlement only. Under these specific circumstances, Plaintiff maintains that the commonality requirement is satisfied. (See *Id.* at p. 1019–20.)   Further, the Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis* (9th Cir. 2001) 275 F.3d 849, 868. Therefore, to satisfy the commonality requirement, the claims must depend upon a common contention that "must be of such a nature that it is capable of class wide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one stroke." *Dukes, supra*, 131 S.Ct. at 2551.

Plaintiff alleges that all claims in this Action are based on common, class-wide policies and procedures, and that liability could accordingly be determined on a class-wide basis, without dependence on individual assessments of liability. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.)   Accordingly, Plaintiff asserts that the answers to the aforementioned questions determine liability to all Class Members claims, wherein commonality is satisfied.

**C.    Typicality**

The typicality requirement is met if the claims of the name representative is typical of those of the class, though "they need not be substantially identical." (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *Classen v. Weller*, 145 Cal. App. 3d 27, 46-47

(1983).)   Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. (*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147; *Wehner v. Syntex Corp.* (N.D. Cal. 1987) 117 F.R.D. 641, 644.) This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes* (9th Cir. 2010) 591 F.3d 1105, 1124. The permissive standard of typicality focuses on similarity between the legal theories of the proposed class representatives and the legal theories of those class members they seek to represent. *See Tibble v. Edison Intern.* (9th Cir. 2013) 711 F.3d 1061, 1074. In deciding whether individual variations preclude typicality, the focus should be on the behavior of the defendants. *Day v. NLO* (S.D. Ohio 1994) 851 F.Supp. 869, 884; *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 692–93. The typicality requirement is satisfied "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether the other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508

In this case, Plaintiff alleges claims based on Defendant's conduct and policies and practices applicable to all Class Members. (Declaration of Gregory Bendau ("Bendau Dec."), ¶¶2-7.) Further, Plaintiff seeks the similar damages (i.e., unpaid wages, penalties, etc.) as other current and former employees.   Therefore, Plaintiff asserts that typicality is easily met in this matter. Defendants do not oppose this assertion, for the purpose of this Settlement motion only.

### D.    Adequacy of Representation

The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442,

450–51.)    Plaintiff's counsel is experienced in wage and hour class litigation. (Odenbreit Dec., ¶¶14-21; Declaration of Ira Spiro ("Spiro Dec."), ¶¶2, 6.) Plaintiff and his counsel have fairly and adequately represented the proposed settlement class and have vigorously prosecuted this action on behalf of the proposed settlement class.    Plaintiff and his counsel do not have any claims or interests which conflict or are antagonistic to the class.    (Odenbreit Dec., ¶¶22, 23; Spiro Dec., ¶3; Bendau Dec., ¶¶7-8.) The adequacy requirement is met where, as here, the class representative's claims are sufficiently interrelated to and not antagonistic to the claims of the class.    (*Hanlon*, *supra*, 150 F.3d at p. 1020.)

Therefore, Plaintiff maintains that the requirements of Fed. R. Civ. P. 23(a) are met in this matter.

### E.    Conditional Certification Pursuant to FRCP 23(b)(3) is Appropriate as Common Questions Predominate

Under Fed. R. Civ. P 23(b)(3), a Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3).) This requirement is met in this instant matter.   When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620.) The manageability of trying the case as a class action is not a factor for a settlement-only class. (*Id.* at p. 620.)

As detailed above, Plaintiff maintains that his allegations against Defendant raises common questions about the policies of Defendant, and the class members' potential legal remedies are identical. Plaintiff asserts that the proposed class in this case is sufficiently cohesive because, for purposes of the Settlement only, the parties agree that all class members share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, *supra*, 150 F.3d 1011, where the Ninth Circuit

approved class certification under the standards set forth in *Amchem*.    Plaintiff further asserts that the proposed Stipulated Class in this case is sufficiently cohesive to warrant adjudication by representation. See *Comcast Corp. v. Behrend* (2013) 569 U.S. 27. Thus, this class may be certified for settlement purposes.    Furthermore, the proposed Settlement herein is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2) In turn, review of a proposed settlement typically proceeds in two stages:

(1)    The Court first conducts a preliminary fairness evaluation, and if the Court preliminarily approves the settlement as falling within the range of possible settlement approval, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled.

(2)    A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

(Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).) "The decision to [grant preliminary approval and] give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23 at Committee

Notes on Rules – 2018 Amendment.

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625. "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, *supra*, 327 F.3d at p. 960 (quoting *Hanlon*, *supra*, 150 F.3d at p. 1026).

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47. Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to

revert to defendants rather than be added to the class fund." *Id*.

At this preliminary stage, "a full fairness analysis is unnecessary." *Munday v. Navy Fed. Credit Union* No. 15-1629-JLS-KES; 2016 WL 7655807, at *7 (C.D. Cal. Sept. 15, 2016). ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out." *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079     (internal citations and quotation marks omitted); *see also Acosta v. Trans Union, LLC* (C.D. Cal. 2007) 243 F.R.D. 377, 386.

For the reasons provided below, Plaintiff requests that the Court grant preliminary approval of the Settlement.

### A.     Strength of Plaintiffs' Case and Risk, Complexity, and Likely Duration of Further Litigation

"Settlement eliminates the risks inherent in certifying a class, prevailing at trial and withstanding any subsequent appeals, and it may provide the last opportunity for class members to obtain relief." *Scott v. HSS, Inc.,* 2017 WL 10378588 *8 (C.D.Cal. Apr. 11, 2017). Given he potential risks of further litigation, this factor weighs in favor of granting preliminary approval. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526 ["In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."]).

The Court must also take into account the potential risks if litigation were to proceed, including difficulties in calculating damages, unsettled or unclear law and difficulties in securing witnesses for trial. (*Mora v. Cal West Ag Services, Inc.* (E.D. Cal., May 13, 2019, No. 115CV01490LJOEPG) 2019 WL 2084725, at *5.)  Further, the Court also must consider whether an action is anticipated to continue with

vigorous litigation and lengthy challenges regarding the merits of the claims and that Defendant may prevail on their defenses. *Id.*

Plaintiff believes in the merits of this case and believes that he will prevail should the case proceed to certification and trial. (Odenbreit Dec., ¶ 25.) Plaintiff believes he can demonstrate Provider Class Members were performing work for which they were not paid at least minimum wage and that the time spent engaged to wait for appointments is compensable. *See e.g.*, IWC Wage Order No. 4-2001, section 2(K); *see also Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 841–42.

However, this case involves a relatively novel issue whereby Defendants' vacation policy may be interpreted as an "unlimited" paid time off policy. While Plaintiff views this as a common issue amenable to class treatment, Defendants' interpretation of the time away policy would likely be the subject of opposition to class certification and summary judgment. (Odenbreit Dec., ¶25.) Additionally, Defendant argues that Provider Class Members were able to engage in personal activities while waiting to see if additional appointments were added to their schedule. (Odenbreit Dec., ¶25.) Plaintiff contends they were not able to engage in certain commitments or activities due to the fact they only had 3 hours to prepare for and conduct an appointment added to their schedules and they could not anticipate or decline an added appointment. (Odenbreit Dec., ¶25.) These unresolved issues create additional risk of obtaining and maintaining certification.

Plaintiff's PAGA claims and the civil penalties potentially able to be recovered are uncertain. Because the Court has the discretion to reduce the amount of penalties assessed based on certain enumerated criteria and courts have frequently reduce penalties significantly and in some cases, zero penalties have been awarded. Plaintiff also faces a challenge to the manageability of a PAGA trial.  (Odenbreit Decl. ¶ 26.)

/-/-/

Despite the strengths of Plaintiffs' case, Plaintiffs believe that the inherent risks, complexity, and costs of what has so far been a protracted litigation weighs in favor of preliminary approval of the Settlement. If litigation continued, these issues and more would be the subject of extensive motion practice likely before and after certification. Therefore, these factors weigh in favor of preliminary approval.

**B.    Amount Offered in Settlement**

"To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchardt v. Law Office of Rory W. Clark* (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435, at *10 (quoting *Tableware*, *supra*, 484 F. Supp. 2d at 1080). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Linkedin User Privacy Litigation* (N.D. Cal. 2015) 309 F.R.D. 573, 587. A settlement amount that is only a fraction of the potential recovery does not render a settlement inadequate or unfair per se. *In re Vizio, Inc., Consumer Privacy Litigation* (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639, at *9; *see also In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 459.

Fairness of a settlement is not conditioned upon Plaintiffs having obtained the maximum amount Plaintiffs could have been awarded at trial, but rather, whether the settlement is reasonable under the totality of the relevant circumstances. As the 9th Circuit noted in *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242: "It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement. The proposed settlement is not judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.")

Here, Plaintiff was provided with the total workweeks worked collectively by the Provider Class, time and pay records, the total collective PAGA pay periods, the total number of Vacation Class Members and parameters for eligibility for the time away from work policy. (Odenbreit Dec., ¶27.) From this information, Plaintiff was able to obtain an expert analysis and damage model projecting the potential maximum exposure in this case. (Odenbreit Dec., ¶¶28-35.) Significant revisions had to be made in the damage model as pre-mediation exchange of information and information revealed in mediation came to light. For example, the Vacation Class only consists of only 24 individuals who were benefit eligible under Defendants' time away from work policy as it only applied to full time employees. (Odenbreit Dec., ¶¶28-35.) Originally, Plaintiff had projected a significant number of employees would qualify. (Odenbreit Dec., ¶30.) Overall, Plaintiff estimates Class Members will receive approximately 11% of the reasonable estimated amount of recovery. (Odenbreit Dec., ¶38.) This is within the range of reasonableness to warrant preliminary approval. *See Singh v. Roadrunner Intermodal Svcs., LLC,* 2018 WL 242325 *7 (E.D.Cal. May 29, 2018) [approving 12% of estimated maximum damages]; *Ferrell v. Buckingham Property Management* (E.D. Cal., July 30, 2020, No. 119CV00332NONESAB) 2020 WL 4364647, at *2 [approving settlement amounting to 5.3% of estimated damages]; *Balderas v. Message Envy Franchising, LLC,* 2014 WL 3160945 *5 (N.D.Cal. July 21, 2014) [approving settlement amounting to 5% of total value].

### C.    Extent of Discovery Proceedings and Stage of the Proceedings

With regard to the extent of discovery, "'formal discovery is not a necessary ticket to the bargaining table.'" *Linney*, *supra*, 151 F.3d 1234, 1239 (quoting *In re Chicken Antitrust Litigation American Poultry* (5th Cir. 1982) 669 F.2d 228, 241). This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about the settlement." *Linney, supra* at 1239. Discovery can formal or informal or both. *See In re Mego Financial Corp.*

*Securities Litigation*  213 F.3d 454 (9th Cir. 2000) [finding plaintiffs had sufficient information to make an informed decision about the settlement where formal discovery had not been completed but class counsel had conducted significant investigation, research and presented court with documentation supporting those services.]

Plaintiff maintains that this Settlement represents a significant guaranteed recovery for all the Participating Class Members. In advance of mediation, Defendants agreed to, and did, provide Plaintiff with informal discovery relating to the size and scope of the class, total work weeks in the class period, Provider Class Members' time records and pay records, and applicable employee handbooks containing Defendants' wage and hour policies. (Odenbreit Dec. ¶12.)

Here significant information regarding the potential claims and legal issues was investigated by Class Counsel before the case was even filed. (Odenbreit Dec., ¶12.) The Parties also discussed extensively the claims, supporting evidence, and documents during the Rule 26(f) conference. (Odenbreit Dec., ¶11.) Prior to mediation, Class Counsel was provided with documents and data sufficient to engage an expert potential liability model. (Odenbreit Dec., ¶12.) Finally, additional legal issues, challenges and data were discussed and exchanged at mediation. (Odenbreit Dec., ¶11.) Therefore, this factor weighs in favor of preliminary approval.

### D.    Experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects the expected outcome of the litigation." *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378. As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement." *In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174. "The recommendations of

plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1043. In fact, experienced counsel's judgment in this respect carries considerable weight. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 528.

The settlement negotiations were conducted by experienced class counsel who have been prosecuting this Action since its inception. (*See* Odenbreit Dec., ¶¶11, 12, 14-21; Spiro Dec., ¶2.) Class counsel wholeheartedly endorses the settlement agreement as fair, reasonable, and adequate. (*Id*.) That endorsement is the product of arm's length negotiations for over a year guided by a respected a former Magistrate Judge (Hon. Jay C. Gandhi [Ret.]) who is familiar with legal and discovery issues arising frequently in   class actions. (Odenbreit Dec., ¶ 11.)   The Court should therefore credit counsel's recommendation that the settlement warrants preliminary approval. *See Linney*, *supra*, 151 F.3d 1234 (N.D. Cal. July 18, 1997) 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997). In the opinion of Class Counsel, the Settlement is fair and reasonable. (Odenbreit Dec., ¶39.)

### E.    Arm's length negotiation free from collusion

When a class settlement is reached before class certification such as the case here, courts are "particularly vigilant" in searching for signs of collusion. *In re Bluetooth*, *supra*, 654 F.3d at 946–47. Courts must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," disproportionate distributions of settlement funds to counsel, and clear-sailing arrangements, none of which exist here (*Id.*) Although the "proposed settlement need not be ideal", it "must be fair, free of collision, [and] consistent with counsel's fiduciary obligations to the class." *Rollins v. Dignity Health,* 336 F.R.D. 456, 461 (N.D.Cal. 2020). The involvement of a mediator is evidence the negotiations were conducted at arms' length. *Joh v. American Income*

*Life Ins. Co.,* 2020 WL 109067 *7 (N.D.Cal. Jan. 9, 2020).

The Parties negotiated this settlement in an all-day mediation with an experienced mediator. Subsequently, the Parties negotiated the agreement over months, discussing at length language within the agreement and its potential impact on the class. (Odenbreit Dec., ¶12.) This factor weighs in favor of approval.

Accordingly, Plaintiff's counsel's opinion is that this settlement is a fair, adequate, and reasonable resolution of the claims in this lawsuit. (Odenbreit Dec. ¶39.) Defendants agree that certification and approval of this settlement is appropriate as a means to avoid the cost of further litigation, to avoid the disruption to its business and employees associated with litigation, to avoid the disruption of its business relationships, and to efficiently end the litigation.

## VII. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS

Federal Rules of Civil Procedure 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. (Fed.R.Civ.P. 23(c)(2)(B).) The proposed Class Notice is attached as Exhibit B of Odenbreit Dec., filed concurrently herewith.

In this case, Plaintiff proposes that the Notice of the Settlement will be mailed via U.S. first-class mail to each Class Member's last known address. Defendant agrees to provide the Settlement Administrator, 15 business days following preliminary approval by this Court, a Class List compiled in good faith based on Defendant's records setting forth each Class Member's: (1) full name; (2) last known mailing address; (3) last known email address; (4) social security number; (5) an indication of whether the individual qualifies as a member of the Vacation Class, and; (6) total number of work weeks worked by Provider Class Members during the Class and PAGA Periods. (Odenbreit Dec., Ex. A, ¶10(b).) The

Settlement Administrator will perform a search on the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members.   Within ten (10) business days of receiving the Class List, the Settlement Administrator will send via first class mail the Court-approved Notice of Settlement to each Class Member. (Odenbreit Dec., Ex. A, ¶10(c).) If a Notice of Settlement is returned because of an undeliverable address, the Settlement Administrator will conduct a skip trace to locate a current address. (Odenbreit Dec., Ex. A, ¶10(d).)

The proposed Notice of Settlement provides information on the meaning and nature of the proposed Class; the terms and provisions of the Settlement; the relief the Settlement will provide to Participating Class Members; the applications of Plaintiff for his Service Award and of Class Counsel for their attorneys' fees and expenses; the payment to the LWDA of its share of the PAGA Award; the payment of the Settlement Administration Costs; the date, time and place of the final settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting objections to the Settlement. If a Class Member chooses to object to the Settlement, they will have forty-five (45) days to submit to the Settlement Administrator an Objection to the Agreement. (Odenbreit Dec., Ex. A, ¶10(d).) Further, Class Members that choose to opt out of the settlement will have forty-five (45) days from the mailing of the Class Notice to a request to be excluded from the settlement. (Odenbreit Dec., Ex. A, ¶10(d).)

The Notice of Settlement also fulfills the requirement of neutrality in class notices.   It summarizes the proceedings to date, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the Manual's statement that "the notice should be accurate, objective, and understandable to Class Members."   (Odenbreit Dec., Ex. B.) The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendant and recognizes that the Court has not ruled on the merits of

the action.   (Odenbreit Dec., Ex. B.) It also states that the final settlement approval decision has yet to be made.   Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. (See Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2); 23(e).)

## VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.   At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval; and Class Members or their counsel may be heard in support of or in opposition to the Settlement Agreement.   The Parties propose that the final approval hearing be held on or after _____, or a date thereafter convenient for the Court.

## IX.   CONCLUSION

For the foregoing reasons, the Parties respectfully request the Court make orders as to the following:

1.   Certifying for settlement purposes only the following classes:

a.  Provider Class: All persons who were employed by Cerebral in California as a non-exempt employee with the job title of Associate Therapist, Care Counselor, Licensed Therapist (NE), Prescriber, Therapist Associate (NE) or Therapist Nonexempt from any time between December 10, 2017 and September 28, 2022

b.  Vacation Class: All former employees of Cerebral who were either a) employed by Cerebral in California as a salaried exempt employee on or after January 1, 2021; or b) employed by Cerebral in California as a non-exempt employee on or after August 15, 2021 and was classified as benefits eligibly by Cerebral at any time

between August 15, 2021 and September 28, 2022;

2. Preliminarily approving the PAGA Settlement Amount;

3. Appointing Gregory Bendau as Class Representative for settlement purposes;

4. Appointing Plaintiff's Counsel, Katherine Odenbreit of MAHONEY LAW GROUP, APC, and Ira Spiro, Attorney at Law as Class Counsel for settlement purposes;

5. Approving Phoenix Class Action Administrators as Settlement Administrator;

6. Approving the form and content of the Class Notice, and directing the mailing of same;

7. Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/
/-/-/

MEMORANDUM OF POINTS AND AUTHORITIES

8.     Directing Defendants to furnish the Settlement Administrator within fifteen (15) business days after the Court grants preliminary approval of the Settlement the Class List, as defined in the Settlement Agreement, which shall be compiled in good faith from Defendant' records to include for each Class Member: (a) full name; (b) last known mailing address; (c) last known email address; (d) social security number; (e) whether the individual qualifies for the Vacation Class during the Class and PAGA Periods, and (f) the total workweeks worked by each member of the Settlement Class during the Class Period and PAGA Periods.

9.     Setting a Final Approval Hearing.


Date: February 6, 2023                    By:   _Katherine J. Odenbreit_
                                          **MAHONEY LAW GROUP, APC**
                                          **IRA SPIRO, ATTORNEY AT LAW**
                                          Kevin Mahoney
                                          Katherine J. Odenbreit
                                          Ira Spiro
                                          Attorneys for Plaintiff, Gregory Bendau